IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN L. BLOOMER, | : |
| Plaintiff, | : |
| v. | : 3:13-cv-00862 |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | : Hon. John E. Jones III |
| Defendant. | : |

## MEMORANDUM

### August 19, 2014

**Introduction**

Plaintiff Susan L. Bloomer has filed this action seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Bloomer's claim for social security disability insurance benefits.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. Bloomer met the insured status requirements of the Social Security Act through December 31, 2008. Tr. 35, 133.[1]

---

[1] References to "Tr.\_" are to pages of the administrative record filed by the Defendant as part of the Defendant's Answer.

Bloomer protectively filed her application for disability insurance benefits on May 18, 2010, alleging that she became disabled on June 23, 2008. Tr. 33, 126. Bloomer had been diagnosed with several impairments that existed prior to her date last insured, including degenerative disc disease of the cervical spine, cervical spinal stenosis, and status post bilateral carpal tunnel release. Tr. 35, 492-97. On August 10, 2010, Bloomer's application was initially denied by the Bureau of Disability Determination. Tr. 33.

A hearing was conducted by an administrative law judge ("ALJ") on August 25, 2011, where Bloomer was represented by counsel. Tr. 48-67.  On September 14, 2011, the ALJ issued a decision denying Bloomer's application. Tr. 33-42. On October 22, 2012, the Appeals Council declined to grant review. Tr. 11. Bloomer filed a complaint before this Court on April 5, 2013.  Supporting and opposing briefs were submitted and this case became ripe for disposition on October 14, 2013 when Bloomer filed a reply brief.

Bloomer appeals the ALJ's determination on three grounds: (1) the ALJ erred in rejecting the opinion of Bloomer's treating physician, (2) the ALJ reached a residual functional capacity determination without the benefit of any medical opinion, and (3) the hypothetical questions posed to the vocational expert were flawed. For the reasons set forth below, the case is remanded to the Commissioner for further proceedings.

**Statement of Relevant Facts**

Bloomer is 49 years of age, has a tenth grade education, and is able to read, write, speak and understand the English language. Tr. 52, 152. Bloomer's past relevant work included work as an assembler/handler clerk/floor person, which is classified as medium, unskilled work, and as a bus cleaner, which is classified as medium, unskilled work. Tr. 61.

A.   **Bloomer's Medical Records up to the Date Last Insured**

Bloomer first presented to her treating physician, John Handago, M.D., complaining symptoms of pain in her cervical spine in June 2004; these symptoms persisted up to her alleged onset date in June 2008. Tr. 355-64.

On June 23, 2008, Bloomer presented to Dr. Handago complaining of continuing cervical pain. Tr. 350. Bloomer had not suffered an overt accident or trauma to her cervical spine, but did have a "repetition type injury with repetitive motion moving large skids of bottles which weighed approximately 250 pounds as part of her work with a duration of 10+ years." Id. Dr. Handago noted a diminished range of motion and spasms in the cervical spine. Id. Bloomer also experienced tenderness to palpation in the paracervical muscles, greater on the right side than on the left. Id. However, a cervical compression test was negative, and Bloomer's reflexes, motor function, and sensory functions were all normal. Id. An x-ray revealed well maintained disc space with no overt degenerative changes;

however, it did reveal a loss of the normal cervical curvature. Tr. 351. Dr. Handago diagnosed Bloomer with a herniated cervical disc. Tr. 350.

Bloomer returned to Dr. Handago on July 28, 2008, August 25, 2008, September 23, 2008, October 23, 2008, and November 20, 2008. Tr. 349. At each appointment, Bloomer complained of continuing cervical pain. Id. At all four appointments, Bloomer had a diminished range of motion accompanied by spasms in the cervical spine; compression tests were positive bilaterally, indicating nerve root compression. Id. Bloomer's reflexes were intact in the upper extremities, although there was tenderness to palpation in the cervical spine region. Id. Dr. Handago consistently diagnosed Bloomer with a herniated cervical disc. Id. At the appointments on July 28 and September 23, Dr. Handago opined that Bloomer was "totally disabled;" at the November 20 appointment, he opined that Bloomer was "partially disabled." Id.

During this period of time, Bloomer also had several appointments with Dr. Handago related to issues with her elbows and wrists; these appointments occurred on July 22, 2008, August 19, 2008, October 6, 2008, and November 11, 2008. Tr. 354. At these appointments, Bloomer had tenderness to palpation in her elbow. Id. She had an acceptable range of motion in her elbows and wrists, and negative Tinel signs and Phalen's tests. Id. At each appointment Bloomer was diagnosed with status post medial epicondyle repair and bilateral carpal tunnel release. Id.

4

At the appointment on July 22, Dr. Handago opined that Bloomer was "partially disabled;" at all other appointments, Dr. Handago opined that Bloomer was "totally disabled." Id.

### B.     Bloomer's Medical Records After the Date Last Insured

Bloomer continued receiving treatment from Dr. Handago on a monthly basis into 2011. Tr. 346-48, 351-71, 451-89. The findings at these appointments were substantially similar. Id. Bloomer continued to experience tenderness to palpation in the cervical region and elbows. Id. She had a diminished cervical range of motion with spasms present. Id. While Bloomer's reflexes were consistently intact, cervical compression tests were consistently positive. Id. Dr. Handago continued to opine that Bloomer was "totally disabled," and continued to diagnose Bloomer with a herniated cervical disc until 2011. Id.

On fourteen different occasions,[2] beginning in 2006 and continuing until 2011, Dr. Handago requested an MRI scan for Bloomer's cervical spine. Id. For unknown reasons, an MRI was not actually performed until February 16, 2011. Tr. 462-63. This MRI revealed that Bloomer was suffering from multilevel degenerative disc disease and spondylosis[3] in the cervical spine, as well as mild

---

[2] Requests were made on October 17, 2006, November 14, 2006, November 19, 2006, December 19, 2006, May 7, 2009, June 8, 2009, July 6, 2009, August 10, 2009, September 8, 2009, October 1, 2009, November 5, 2009, December 7, 2010, January 11, 2011, and February 15, 2011. Id.
[3] "Cervical spondylosis is a general term for age-related wear and tear affecting the spinal disks in your neck. As the disks dehydrate and shrink, bone spurs and other signs of osteoarthritis develop." Mayoclinic.com, Cervical Spondylosis Definition, *available at*

5

spinal stenosis[4] at the C5-6 level, and neural foraminal narrowing at several levels, most predominately at the C5-6 level. Tr. 463.

On May 17, 2011, Paul Jones, M.D. conducted an independent medical examination related to Bloomer's worker's compensation case. Tr. 443-46. Bloomer had a full range of motion in her neck and shoulders, with a positive impingement test of the right shoulder. Tr. 445. Bloomer's anterior humeral head was tender to palpation, although her cervical, trapezius, and interscapular areas were not; there was no evidence of any spasms. Id. Bloomer's reflexes and sensations were normal in her upper extremities. Id. Dr. Jones opined that Bloomer had a "mild disability," but would be able to work with certain restrictions. Tr. 447. Dr. Jones opined that Bloomer should have no prolonged overhead activities, and could not lift more than fifteen to twenty pounds; she should also avoid repetitive lifting. Id.

C.     **Residual Functional Capacity Assessments**

On August 10, 2010, Jan Kapcala, D.O.,[5] opined that, based on an absence of evidence to the contrary, Bloomer's medically determinable impairments were

---

http://www.mayoclinic.org/diseases-conditions/cervical-spondylosis/basics/definition/con-20027408 (last visited August 13, 2014).

[4] "Spinal stenosis is a narrowing of the open spaces within your spine, which can put pressure on your spinal cord and the nerves that travel through the spine." MayoClinic.com, Spinal Stenosis Definition, *available at* http://www.mayoclinic.org/diseases-conditions/spinal-stenosis/basics/definition/con-20036105 (last visited August 13, 2014).

[5] Dr. Kapcala was a state agency consulting physician who reviewed Bloomer's medical records at the initial determination level. Tr. 442.

non-severe. Tr. 442. Dr. Kapcala placed significant emphasis on the fact that there were no neurological findings or imaging studies to support Dr. Handago's diagnosis of a herniated cervical disc. Id.

On July 15, 2011, Dr. Handago completed a physical residual functional capacity assessment. Tr. 492-97. Due to the February 2011 MRI, Dr. Handago altered his diagnosis of Bloomer's medical impairment. Tr. 492. He believed that Bloomer's physical limitations were caused by cervical spinal stenosis, rather than his earlier diagnosis of a herniated cervical disc. Id. Dr. Handago opined that Bloomer was capable of occasionally lifting or carrying up to ten pounds. Id. He further opined that Bloomer could sit for one hour at a time, for a total of five hours during an eight-hour workday. Tr. 493. Bloomer was capable of standing for up to thirty minutes at a time, for a total of one hour during a workday, and could walk for one hour at a time, for up to two hours total during the workday. Id.

Dr. Handago believed that Bloomer could only occasionally reach, push, or pull with her right hand, though she could frequently handle, finger, or feel objects with her right hand. Tr. 494. Bloomer could never reach with her left hand, although she could occasionally handle or finger objects. Id. Bloomer could occasionally operate foot controls. Id. Dr. Handago opined that Bloomer should never climb ladders or scaffolds, but could occasionally climb stairs or ramps. Tr. 495. She should avoid unprotected heights or extreme temperatures, but could

occasionally tolerate humidity, wetness, vibrations, or airborne irritants. Tr. 496. Furthermore, Bloomer should only occasionally operate motor vehicles or be exposed to moving mechanical parts. Id. Dr. Handago stated that, within a reasonable degree of medical certainty, he believed these limitations had been present since 1998. Tr. 497.

### D. The Administrative Hearing

On August 26, 2011, Bloomer's administrative hearing was conducted. Tr. 48-67. At that hearing, Bloomer testified that she had been unable to work since June 2008 due to problems with her neck and arms, as well as fatigue. Tr. 53. Bloomer stated that, in 2008, she was able to sit for a "couple [of] hours," but would then need to get up and move; she was able to walk for "about" one mile. Tr. 55. Bloomer would experience numbness in her hands if she overused them. Id. Bloomer was able to care for her personal needs and do light housework, but after a while, she would "have to lay [sic] down" due to pain in her neck. Tr. 56.

Bloomer further testified that she had attempted to work part-time during 2008, but sometimes had to call out of work because of her physical impairments. Tr. 57. During 2008, she also required one to two naps per day because of her fatigue; each nap lasted for approximately one to two hours. Id. Due to her cervical spine issues, Bloomer stated that she could not hold her neck in one

position for more than one hour due to pain. Tr. 59. To alleviate the pain, Bloomer would have to lie down and rest. Id.

After Bloomer testified, Nadine Henzes, an impartial vocational expert, was called to give testimony. Tr. 60. The ALJ asked Ms. Henzes to assume a hypothetical individual with Bloomer's age, education, and work experience who was limited to light work[6] that did not involve any overhead work or reaching beyond arms-length bilaterally. Tr. 61. Furthermore, the hypothetical individual must not be exposed to temperature extremes, high humidity, or vibrations. Id.

Ms. Henzes opined that, given these restrictions, the hypothetical individual would not be able to perform any of Bloomer's past relevant work. Id. However, the individual would be capable of performing three jobs that existed in significant numbers in the regional economy: a cashier, an usher, and a cafeteria attendant. Id.

**Discussion**

In an action under 42 U.S.C. § 405(g) to review the Commissioner's decision denying a plaintiff's claim for disability benefits, the district court must uphold the findings of the Commissioner so long as those findings are supported

---

[6] Light Work is defined by the regulations of the Social Security Administration as work "with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967.

by substantial evidence. Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). In an adequately developed record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 203 (3d Cir. 2008).

Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner utilizes a five-step process in evaluating disability insurance benefits claims. See 20 C.F.R. § 404.1520; Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 91-92 (3d Cir. 2007). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity, (2) has an impairment that is severe or a combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment, (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. See 20 C.F.R. § 404.1520. The initial burden to prove disability and inability to engage in past relevant work rests on the claimant; if the claimant meets this burden, the burden then shifts to the Commissioner to show that a job or jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason, 994 F.2d at 1064.

A.   **The ALJ's Evaluation of Opinion Evidence**

On appeal, Bloomer challenges the ALJ's evaluation of the opinion evidence. Specifically, Bloomer contends that the ALJ improperly rejected the opinion of her treating physician, Dr. Handago. This argument is comprised of

two separate parts: first, Bloomer contends that the ALJ erred by ignoring Dr. Handago's residual functional capacity assessment, and second, she argues that the ALJ violated the treating physician rule of the United States Court of Appeals for the Third Circuit.  See, Morales v. Apfel, 225 F.3d 310, 316-18 (3d Cir. 2000).

Dr. Handago completed a residual functional capacity assessment and opined that Bloomer suffered from a litany of physical limitations due to her cervical spine issues.  Tr. 492-97.  While Dr. Handago completed this form in 2011, he specifically stated that he believed within a reasonable degree of medical certainty that all of Bloomer's physical limitations had existed during the relevant period in 2008.  Tr. 497.  Dr. Handago's opinion that the limitations related back to 1998 is consistent with Bloomer's long history of cervical pain.  Tr. 355-64.  Most of the limitations that Dr. Handago felt were appropriate, such as limitations on Bloomer's ability to stand, walk, balance, stoop, kneel, crouch, or crawl, were not incorporated into the ALJ's residual functional capacity determination.  Tr. 37.

Without any discussion or mention of Dr. Handago's opinion, this Court "cannot tell if significant probative evidence was not credited or simply ignored." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (quoting Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).  The failure to discuss Dr. Handago's opinion constituted clear legal error; on remand, the ALJ must consider this

opinion and provide appropriate reasons for either accepting or rejecting the opinion.[7]

Furthermore, and ALJ is required to incorporate all credibly established limitations into the hypothetical question posed to the vocational expert at step five. See, Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). The ALJ's failure to incorporate the limitations that Dr. Handago provided in the hypothetical questions, or provide an explanation as to why such limitations were not credible, rendered the ALJ's conclusions at step five defective. Therefore, the ALJ's determination that there were other jobs that Bloomer could perform in the regional economy was not supported by substantial evidence.

B.  **Physical Residual Functional Capacity Assessment**

Remand is further necessitated based upon the ALJ's decision to reach a residual functional capacity determination without relying upon any assessment offered by a physician. Rarely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant. See Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986) ("No physician suggested that the activity [the claimant] could perform was consistent with the definition of light work set forth in the regulations, and

---

[7] The Commissioner's discussion of Cunningham v. Comm'n of Soc. Sec., 507 F.App'x 111 (3d Cir. 2012), is inapposite to this case. There, the ALJ discussed the treating physician's opinion, but rejected it for a number of reasons. Id. at 118. In contrast, here the ALJ failed entirely to mention Dr. Handago's residual functional capacity assessment.

13

therefore the ALJ's conclusion that he could is not supported by substantial evidence."). See also, Maellaro v. Colvin, 3:12–CV-01560, 2014 WL 2770717, at *11 (M.D. Pa. June 18, 2014); Arnold v. Colvin, 3:12-CV-02417, 2014 WL 940205, at *4 (M.D. Pa. Mar. 11, 2014); Gormont v. Astrue, 3:11-CV-02145, 2013 WL 791455, at *7 (M.D. Pa. Mar. 4, 2013); Troshak v. Astrue, 4:11-CV-00872, 2012 WL 4472024, at *7 (M.D. Pa. Sept. 26, 2012).

Dr. Handago opined that Bloomer suffered from several physical limitations, including her ability to stand, walk, or sit. Tr. 492-97. The ALJ decided, without the benefit of any medical opinion, that Bloomer had no limitations in her ability to stand, walk, or sit throughout the workday. Tr. 37. The only medical opinion of record that contradicted Dr. Handago's opinion was that of Dr. Kapcala. Tr. 442. Dr. Kapcala opined at the initial determination level that there was insufficient evidence to conclude that Bloomer suffered from any medically determinable impairment. Id. However, Dr. Kapcala's opinion was rendered in August 2010, months prior to Bloomer's MRI scan, and nearly one year prior to Dr. Handago's opinion. Tr. 462-63, 492-97.

The MRI scan confirmed the existence of spinal impairments, including cervical spondylosis. Tr. 462. Dr. Handago altered his diagnosis based on the MRI results, from a herniated cervical disc to spinal stenosis. Tr. 492. Dr. Handago opined that Bloomer's limitations had existed prior to his date last

insured. Tr. 497. This evidence was not available to Dr. Kapcala, and rendered his opinion outdated. Furthermore, Dr. Kapcala's opinion is inconsistent with the ALJ's opinion. Dr. Kapcala believed that Bloomer did not have any medically determinable impairment. Tr. 442. In contrast, the ALJ found that Bloomer had four medically determinable impairments. Tr. 35-36.

Additionally, the ALJ did not rely upon, or even mention, Dr. Kapcala's opinion in the decision. Tr. 37-40. The ALJ did not cite to a single medical opinion that contradicted Dr. Handago's opinion; thus, the ALJ improperly set his "own expertise against that of a physician who present[ed] competent medical evidence." Plummer v. Apfel, 186 F.3d 422, 429 (2d Cir. 1999). Consequently, the AJL's residual functional capacity determination is not supported by substantial evidence.

## Conclusion

A review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence. Pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is vacated, and this case is remanded for further proceedings.

An appropriate Order will be entered.